**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Gabriel Salcido, et al.,

Plaintiffs,

v.

JPMorgan Chase Bank NA, et al.,

Defendants.

No. CV-14-02560-PHX-DGC

**ORDER**

Defendants Seterus, Inc. and Federal National Mortgage Association have filed a motion of dismiss (Doc. 16), as have Defendants JPMorgan Chase Bank, N.A. and Chase Home Financial LLC (Doc. 21). Defendants argue that Plaintiffs' claims are barred by the statute of limitations. The motions are fully briefed, and will be granted.[1]

## I. Background.

Plaintiffs' allegations are as follows. In 2005, Plaintiffs Gabriel Salcido and Ingrid Fisketjon, a married couple, took out a loan secured by a deed of trust for their house. Doc. 1-1, ¶ 10. This loan was subject to the Home Affordable Modification Program ("HAMP"), a federal program designed to facilitate the modification of mortgages. *Id.*, ¶¶ 11-12. In 2009, Plaintiffs had financial difficulties and sought to modify the terms of their loan with Defendants JPMorgan Chase Bank and Chase Home Finance, LLC (collectively, "Chase"). *Id.*, ¶ 11. On July 1, 2009, Chase informed

[1] The requests for oral argument are denied because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

Plaintiffs that it would not modify their loan under HAMP because Plaintiffs had failed to make several trial-period payments of $900 a month. *Id.*, ¶ 17. Plaintiffs claim that they were ignorant of any requirement to make these payments. *Id.* Plaintiffs also claim that they were in fact eligible for a loan modification under HAMP. *Id.*, ¶ 57.

Chase then offered an "internal" or "in-house" modification of Plaintiffs' loan. *Id.*, ¶ 19. Plaintiffs agreed and paid $1,200 a month to Chase for at least fifteen months. *Id.* On August 10, 2010, Chase notified Plaintiffs that it had transferred the servicing rights on their loan to Defendant Seterus, Inc. *Id.*, ¶ 20. After reviewing Plaintiffs' debt, Seterus informed Plaintiffs that it lacked documentation of Plaintiffs' loan modification with Chase and of Plaintiffs' $1,200 a month payments to Chase. *Id.*, ¶ 22. Plaintiffs therefore had to apply for another loan modification with Seterus. *Id.*

Seterus then "drag[ged] out" this application process by requiring Plaintiffs to fill out detailed forms and keeping Plaintiffs on hold for hours, while Seterus "continued to rack up late fees, default interest, costs and other fees[.]" *Id.*, ¶¶ 23-25. Finally, on February 10, 2011, Seterus orally agreed to modify Plaintiffs' loan if Plaintiffs paid $12,000 upfront and $2,300 a month afterwards. *Id.*, ¶ 26. Plaintiffs requested that the $12,000 be held in escrow, Seterus refused, and the deal fell through. *Id.*, ¶ 27.

Seterus then decided to hold a trustee's sale of the property. *Id.*, ¶ 31. Plaintiffs tried to postpone this sale and enlisted the National Association of Consumer Advocates to help them. *Id.*, ¶¶ 28, 31. In response, Seterus gave inconsistent and false information. *Id.*, ¶¶ 31-34. The sale ultimately went through on March 3, 2011. *Id.*, ¶¶ 31-34. On March 7, 2011, Plaintiffs learned that Defendant Federal National Mortgage Association ("FNMA") claimed to be the owner of Plaintiffs' loan. *Id.*, ¶ 35. While receiving eviction notices, Plaintiffs attempted to modify their loan with FNMA. *Id.*, ¶¶ 36-42. In May of 2011, FNMA orally requested Plaintiffs to pay $10,000 to Seterus, Plaintiffs asked that this be put in writing, and FNMA refused. *Id.*, ¶ 42.

On July 1, 2011, Plaintiffs filed a Chapter 13 bankruptcy petition, which stalled the eviction efforts. *Id.*, ¶ 43. The bankruptcy petition was voluntarily dismissed on

June 7, 2012. *Id.* Beginning in 2011, Plaintiffs also pursued what they term "administrative remedies." *Id.*, ¶ 39. They sought another loan modification with Seterus on September 18, 2013. *Id.*, ¶ 44. They also filed complaints with their United States senators, the Arizona Attorney General's Office, the United States Office of Homeownership Preservation, the HAMP Solutions Center, and the Consumer Financial Protection Bureau. *Id.*, ¶¶ 39-47. When all of these complaints came to naught, Plaintiffs filed this lawsuit on October 8, 2014.

Plaintiffs assert five claims: (1) negligent performance of an undertaking against all Defendants; (2) unjust enrichment against the Chase Defendants and FNMA; (3) conversion against the Chase Defendants and FNMA; (4) breach of the covenant of good faith and fair dealing against all Defendants; and (5) wrongful foreclosure against FNMA.

## II. Legal Standards.

### A. Arizona's Statute of Limitations.

Under Arizona law, "[t]he purpose of the statute of limitations is to 'protect defendants and courts from stale claims where plaintiffs have slept on their rights.'" *Doe v. Roe*, 955 P.2d 951, 960 (Ariz. 1998) (quoting *Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of Am.*, 898 P.2d 964, 968 (Ariz. 1995)). "As a general matter, a cause of action accrues, and the statute of limitations commences, when one party is able to sue another." *Gust*, 898 P.2d at 966 (citing *Sato v. Van Denburgh*, 599 P.2d 181, 183 (Ariz. 1979)). Thus, "the period of limitations begins to run when the act upon which legal action is based took place, even though the plaintiff may be unaware of the facts underlying his or her claim." *Id.* To mitigate the harshness that the traditional rule sometimes imposed, courts have developed the "discovery rule" exception. *Id.* Under the discovery rule, "a cause of action does not accrue until the plaintiff knows or with reasonable diligence should know the facts underlying the cause." *Doe*, 955 P.2d at 960. "The rationale behind the discovery rule is that it is unjust to deprive a plaintiff of a cause of action before the plaintiff has a reasonable basis for believing that a claim exists."

*Gust*, 898 P.2d at 967. "The defense of statute of limitations is never favored by the courts, and if there is doubt as to which of two limitations periods should apply, courts generally apply the longer." *Id.* at 968.

**B. Rule 12(b)(6).**

"[T]he statute of limitations defense . . . may be raised by a motion to dismiss . . . . [i]f the running of the statute is apparent on the face of the complaint[.]" *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980). The complaint cannot be dismissed, however, "'unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim.'" *Hernandez v. City of El Monte*, 138 F.3d 393, 402 (9th Cir. 1998) (quoting *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995)); *see Cervantes v. City of San Diego*, 5 F.3d 1273, 1275 (9th Cir. 1993). Indeed, "[d]ismissal on statute of limitations grounds can be granted pursuant to Fed. R. Civ. P. 12(b)(6) 'only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled.'" *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999) (quoting *Vaughan v. Grijalva*, 927 F.2d 476, 478 (9th Cir. 1991)); *see Pisciotta v. Teledyne Indus., Inc.*, 91 F.3d 1326, 1331 (9th Cir. 1996). "'Because the applicability of the equitable tolling doctrine often depends on matters outside the pleadings, it is not generally amenable to resolution on a Rule 12(b)(6) motion.'" *Hernandez*, 138 F.3d at 402 (quoting *Supermail Cargo*, 68 F.3d at 1206).

**III. Analysis.**

**A. Negligent Performance of an Undertaking.**

Under Arizona law, "'[o]ne who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if . . . his failure to exercise reasonable care increases the risk of such harm[.]'" *Diggs v. Arizona Cardiologists, Ltd.*, 8 P.3d 386, 390 (Ariz. Ct. App. 2000) (quoting Restatement (Second)

of Torts § 324A). The statute of limitations for this claim is two years. A.R.S. § 12-542(3); *see McManus v. Am. Exp. Tax & Bus. Servs., Inc.*, 67 F. Supp. 2d 1083, 1086 (D. Ariz. 1999).

Against Defendants JPMorgan Chase Bank, Chase Home Financial, and FNMA,[2] Plaintiffs allege the following facts in support of this claim: (1) Defendants improperly evaluated Plaintiffs' eligibility for a loan modification under HAMP; (2) Defendants failed to inform Plaintiffs that they were required to make several "trial-period payments" for the loan modification under HAMP; (3) Defendants failed to document the "in-house" loan modification provided for Plaintiffs; and (4) Defendants failed to document receipt of the $1,200 monthly payments made by Plaintiffs. Doc. 1-1, ¶¶ 54-65.

Plaintiffs became aware of the first two facts on July 1, 2009, when Chase informed Plaintiffs that they were not eligible for a loan modification under HAMP due to their failure to make trial-period payments. *Id.*, ¶ 17. Plaintiffs became aware of the third and fourth facts when Seterus told Plaintiffs that it did not have documentation of their loan modification with Chase and of their $1,200 monthly payments. *Id.*, ¶ 22. Although Plaintiffs do not allege a date for this event, it certainly occurred before February 10, 2011, when Seterus offered a different loan modification. *Id.*, ¶ 26. These dates are more than two years before the date of Plaintiffs' complaint, October 8, 2014. Plaintiffs' negligence claim against these Defendants is therefore barred by the statute of limitations.

Against Defendants Seterus and FNMA, Plaintiffs' allege the following facts in support of their claim: (1) Seterus did not timely process Plaintiffs' application for a loan modification; (2) Seterus improperly demanded a large upfront payment for a loan modification; and (3) Seterus failed to honor Plaintiffs' previous loan modification with and $1,200 monthly payments to Chase. *Id.*, ¶¶ 68-70. Plaintiffs knew all of these facts

---

[2] Plaintiffs allege that FNMA was the true owner of Plaintiffs' loan and that the Chase Defendants and Seterus were acting as FNMA's agents when they serviced Plaintiffs' loan. Doc. 1-1, ¶¶ 12, 55, 66. Plaintiffs claim that FNMA is vicariously liable for the actions of these Defendants. *Id.*, ¶¶ 55, 66.

by February 10, 2011. By this time, Plaintiffs had completed the application process for a loan modification, Seterus had demanded a large upfront payment, and Seterus had told Plaintiffs it would not honor their loan modification with and $1,200 a month payments to Chase. *Id.*, ¶¶ 22-26. Because Plaintiffs knew of these facts more than two years before they filed their complaint, their negligence claim against Seterus and FNMA is barred by the statute of limitations.

**B. Unjust Enrichment.**

Under Arizona law, "[u]njust enrichment occurs when one party has and retains money or benefits that in justice and equity belong to another." *Trustmark Ins. Co. v. Bank One, Ariz., NA*, 48 P.3d 485, 491 (Ariz. Ct. App. 2002). The statute of limitations for this claim is three years. A.R.S. § 12-543(1); *MCK Exports, LLC v. Wal-Mart Stores, Inc.*, No. CV 13-156-TUC-DCB, 2014 WL 3700877, at *6 (D. Ariz. July 25, 2014).

In support of their unjust enrichment claim against Defendants JPMorgan Chase Bank, Chase Home Financial, and FNMA, Plaintiffs allege that Defendants received at least ten monthly $1,200 payments from Plaintiffs and did not apply those payments to Plaintiffs' loan. Doc. 1-1, ¶¶ 78-81. Plaintiffs became aware of these facts by February 10, 2011, by which time Seterus had told Plaintiffs that it lacked documentation of Plaintiffs' loan modification and their $1,200 monthly payments to Chase. *Id.*, ¶¶ 22, 26. Because this date is more than three years before the date of Plaintiffs' complaint, their unjust enrichment claim is barred by the statute of limitations.

**C. Conversion.**

Under Arizona law, "[c]onversion is defined as 'an act of wrongful dominion or control over personal property in denial of or inconsistent with the rights of another.'" *Case Corp. v. Gehrke*, 91 P.3d 362, 365 (Ariz. Ct. App. 2004) (citation omitted). The statute of limitations for this claim is two years. A.R.S. § 12-542(5); *Tissicino v. Peterson*, 121 P.3d 1286, 1290 (Ariz. Ct. App. 2005). In support of this claim against Defendants JPMorgan Chase Bank, Chase Home Financial, and FNMA, Plaintiffs allege the same facts as for its unjust enrichment claim, namely, that Defendants accepted over

ten $1,200 monthly payments without applying the payments towards Plaintiffs' loan. As noted, Plaintiffs became aware of this by February 10, 2011. Plaintiffs' conversion claim is barred by the statute of limitations.

**D. Breach of Covenant of Good Faith and Fair Dealing.**

Under Arizona law, a party may bring a tort action for breach of the covenant of good faith and fair dealing implied in every contract. *Wells Fargo Bank v. Arizona Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 38 P.3d 12, 28-29 (Ariz. 2002). The statute of limitations for this claim is two years. A.R.S. § 12-542(3); *Frew v. Coit Servs., Inc.*, No. CV-07-1372-PHX-DGC, 2007 WL 2903026, at *2 (D. Ariz. Oct. 2, 2007).

Plaintiffs bring this claim against all Defendants. They base the claim on Defendants' failure to honor Plaintiffs' loan-modification agreement with Chase and $1,200 payments to Chase. Doc. 1-1, ¶¶ 96-102. As with the other claims, Plaintiffs knew of these facts by February 10, 2011. *Id.*, ¶¶ 22, 26. This claim is also barred by the statute of limitations.

**E. Equitable Tolling of Statute of Limitations.**

Plaintiffs do not appear to dispute that their complaint was filed after the applicable limitations periods. *See* Docs. 20 at 7-8; 28 at 6-13. Rather, they argue that the statute of limitations should be equitably tolled.

"'Under equitable tolling, plaintiffs may sue after the statutory time period for filing a complaint has expired if they have been prevented from filing in a timely manner due to sufficiently inequitable circumstances.'" *McCloud v. State, Ariz. Dep't of Pub. Safety*, 170 P.3d 691, 696 (Ariz. Ct. App. 2007) (quoting *Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 240 (3d Cir. 1999)). "Equitable tolling applies only in 'extraordinary circumstances' and not to 'a garden variety claim of excusable neglect.'" *Little v. Arizona*, 240 P.3d 861, 867 (Ariz. Ct. App. 2010) (quoting *McCloud*, 170 P.3d at 697). Equitable tolling may apply when "plaintiffs were 'lulled' or 'misled' into an untimely filing by the actions of the defendant," *Stulce v. Salt River Project Agr. Imp. &*

*Power Dist.*, 3 P.3d 1007, 1015 (Ariz. Ct. App. 1999), or when "the plaintiff is excusably ignorant of the limitations period and the defendant would not be prejudiced by the late filing," *Kyles v. Contractors/Engineers Supply, Inc.*, 949 P.2d 63, 65 (Ariz. Ct. App. 1997). Plaintiffs bear the burden of establishing that a limitations period should be equitably tolled. *McCloud*, 170 P.3d at 694.

Plaintiffs argue that their pursuit of administrative remedies under HAMP entitles them to equitable tolling. Doc. 20 at 7-8.[3] As previously noted, HAMP is a federal program designed to provide relief for homeowners. *See Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 556-57 (7th Cir. 2012) (noting that HAMP was established by Secretary of the Treasury under the Emergency Economic Stabilization Act of 2008). Specifically, HAMP "provides eligible borrowers the opportunity to modify their first lien mortgage loans to make them more affordable. Under HAMP, servicers apply a uniform loan modification process to provide eligible borrowers with . . . sustainable monthly payments for their first lien mortgage loans." *HAMP Guidelines* at 15 (found at www.hmpadmin.com/portal/programs/docs/hamp_servicer/mhahandbook_44.pdf).[4]

A borrower dissatisfied with a loan servicer's decision regarding a loan modification may "escalate" the issue. *Id.* at 60-63. An escalation requires the servicer to reexamine the borrower's eligibility for a modification. *Id.* In certain circumstances, the servicer may not consider the case resolved until a third-party agency "concurs with the proposed resolution." *Id.* at 62. Plaintiffs allege that they pursued an escalation of their loan-modification dispute with Defendants. Doc. 1-1, ¶¶ 39, 44. They further claim

---

[3] Defendants claim that Plaintiffs were not in fact eligible for a loan modification under HAMP. Doc. 25 at 6. Because the Court finds that the HAMP administrative process does not result in equitable tolling, the Court need not resolve this issue.

[4] This Internet address includes a 237-page document explaining HAMP and other federal programs. The document was not included in Plaintiffs' complaint. Rather, Plaintiffs first provided this link in their response. Doc. 20 at 7 n.2. Defendants do not dispute the document's authenticity. Normally, the Court will not consider evidence or documents beyond the complaint when ruling on a Rule 12(b)(6) motion to dismiss. *See United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003). But because the document appears to be incorporated by reference in the complaint (Doc. 1-1, ¶ 39), and does not change the outcome of this case, the Court will consider it. *See id.* at 908.

that the "loan modification process" continued until "sometime in 2014." Doc. 20 at 8. They argue, without citing applicable caselaw, that this administrative process should equitably toll the statute of limitations. *Id.*

The statute of limitations is equitably tolled when the pursuit of administrative remedies is a precondition to filing suit. *Third & Catalina Associates v. City of Phoenix*, 895 P.2d 115, 118-19 (Ariz. Ct. App. 1994); *Harris v. Alumax Mill Products, Inc.*, 897 F.2d 400, 404 (9th Cir. 1990). Courts have also found that the filing of a lawsuit may equitably toll the limitations period for a second lawsuit, so long as "both actions involve the same basic right or claim." *Hosogai v. Kadota*, 700 P.2d 1327, 1331-35 (Ariz. 1985) (collecting cases). The law is less clear, however, on whether the pursuit of optional administrative remedies – such as escalating a case under HAMP guidelines – merits equitable tolling.

Some courts have held that equitable tolling is appropriate even if the administrative proceedings are optional. *See McDonald v. Antelope Valley Cmty. Coll. Dist.*, 194 P.3d 1026, 1032 (Cal. 2008); *Dayhoff v. Temsco Helicopters, Inc.*, 772 P.2d 1085, 1087-88 (Alaska 1989). Other courts have held that the pursuit of optional administrative remedies may equitably toll the statute if the administrative proceeding adequately gives "notice of the existence of a legal claim." *Erickson v. Croft*, 760 P.2d 706, 709 (Mont. 1988). The apparent majority of courts has held that equitable tolling is generally not available where a plaintiff chooses to pursue optional administrative remedies before filing a lawsuit. *See Int'l Union of Elec., Radio & Mach. Workers, AFL-CIO, Local 790 v. Robbins & Myers, Inc.*, 429 U.S. 229, 231, 237 (1976) (finding that "the existence and utilization of grievance procedures" does not equitably toll the limitations period for filing of an EEOC charge); *see also Kalyanaram v. Am. Ass'n of Univ. Professors at N.Y. Inst. of Tech.*, 742 F.3d 42, 48 (2d Cir. 2014); *Brodeur v. Am. Home Assur. Co.*, 169 P.3d 139, 149-51 (Colo. 2007) (finding that "the accrual of a bad faith tort claim is not tolled by a workers' compensation proceeding"); *Harris*, 897 F.2d at 404 (emphasizing that courts are "reluctant to invoke tolling where a plaintiff is tardy

in pursuing a parallel avenue of relief"); *Conley v. Int'l Bhd. of Elec. Workers, Local 639*, 810 F.2d 913, 916 (9th Cir. 1987) (Kennedy, J.). Arizona courts have not addressed this issue.

"When an issue of state law arises in federal court and there is no controlling decision by the state's highest court, the federal court is obliged to predict what the state's highest court would decide if confronted with the issue." *Lucero v. Valdez*, 884 P.2d 199, 204 (Ariz. Ct. App. 1994) (citing *Aetna Casualty & Sur. Co. v. Sheft*, 989 F.2d 1105, 1108 (9th Cir. 1993)). After examining precedent from Arizona and other jurisdictions, the Court concludes that equitable tolling is not appropriate in this case.

As already noted, an apparent majority of courts has found that equitable tolling is not available where a plaintiff voluntarily pursues an optional administrative remedy. While this is not dispositive, Arizona courts look to other jurisdictions in deciding questions of first impression. *See, e.g.*, *Midas Muffler Shop v. Ellison*, 650 P.2d 496, 499 (Ariz. Ct. App. 1982). Furthermore, those jurisdictions that do allow equitable tolling in these circumstances often require that the administrative proceeding give "notice of the existence of a legal claim." *Erickson*, 760 P.2d at 709. Thus, the optional administrative proceedings that merit equitable tolling often have a "quasi-judicial" character. *Id.*; *see also Sorenson v. Massey-Ferguson, Inc.*, 927 P.2d 1030, 1032 (Mont. 1996). For example, in *McDonald*, the optional administrative proceedings involved an investigation and an internal appeals process. 194 P.3d at 1029-30. In *Dayhoff*, the administrative proceeding was with the Department of Labor, which had the power to investigate and order compliance. 772 P.2d at 1086.

The proceeding in this case – an "escalation" under HAMP guidelines – appears to involve little more than a bank rechecking whether a borrower is eligible for a loan modification. *See HAMP Guidelines* at 60-63. At most, the bank's resolution of an issue is subject to a third-party's approval. *Id.* at 62. Although Plaintiffs' "escalation" under HAMP guidelines involved many of the same issues as this case, the administrative proceeding would not have given Defendants notice that they might be sued for damages.

More significantly, the facts in this case are quite dissimilar from facts that have merited equitable tolling in other Arizona cases. In *Kyles*, the plaintiff received a right-to-sue notice from the Attorney General's Office stating that plaintiff must file his claim within one year, when in fact the law required him to file within ninety days. 949 P.2d at 66. Plaintiff filed his claim within one year, but after ninety days had passed. *Id.* The court applied equitable tolling because the plaintiff "was entitled to rely on the deadline in the notice" and defendants were not prejudiced by the late filing. *Id.*

In *Kosman v. Arizona*, 16 P.3d 211 (Ariz. Ct. App. 2000), the court considered whether a prisoner's pursuit of an optional internal grievance procedure equitably tolled the 180-day-limitations period for filing a notice of claim. *Id.* at 212-13. The court found that if the prisoner had reasonably believed that the internal procedure was a precondition to filing suit, then equitable tolling may be appropriate because the prisoner was "'excusably ignorant of the limitations period and the defendant would not be prejudiced by the late filing.'" *Id.* at 213 (quoting *Kyles*, 949 P.2d at 65). The court then remanded the case to determine whether the prisoner reasonably believed that the grievance procedure was required. *Id.* at 214.

Unlike *Kyles* and *Kosman*, Plaintiffs have not alleged that they were misled about the statute of limitations or that they reasonably believed the procedures under HAMP were mandatory. Rather, they simply chose to complete optional administrative proceedings before filing suit. While pursuing optional remedies may have been entirely reasonable, it did not excuse Plaintiffs from complying with the relevant statutes of limitation. As already noted, Arizona law limits equitable tolling to "extraordinary circumstances," *Little*, 240 P.3d at 867, where "plaintiffs were 'lulled' or 'misled' into an untimely filing by the actions of the defendant," *Stulce*, 3 P.3d at 1015, or where "the plaintiff is excusably ignorant of the limitations period," *Kyles*, 949 P.2d at 65. Plaintiffs, who bear the burden of establishing their right to equitable tolling, *McCloud*, 170 P.3d at 694, have not shown that any of these circumstances exist. Nor have Plaintiffs alleged any incapacity that would have prevented them from filing suit. Indeed, they were

capable of pursuing all kinds of relief, filing a bankruptcy petition and submitting complaints to Senator McCain, Senator Kyl, the Arizona Attorney General's Office, the United States Treasury Department, and the Consumer Financial Protection Bureau. *Id.*, ¶¶ 39-47.[5]

Finally, Plaintiffs argue that if they had filed suit before completing the HAMP procedures, Defendants would have been able to withdraw from the HAMP proceedings. *See HAMP Guidelines* at 63. The Court finds this argument unavailing. Arizona's statute of limitations gave Plaintiffs up to two or three years to pursue other remedies. That Plaintiffs freely chose to pursue these remedies beyond the limitations period does not call for equitable tolling. *See Johnson v. Ry. Exp. Agency, Inc.*, 421 U.S. 454, 466 (1975) ("The fact that [plaintiff's] slumber may have been induced by faith in the adequacy of [the administrative] remedy is of little relevance inasmuch as the two remedies are truly independent. . . . We find no policy reason that excuses petitioner's failure to take the minimal steps necessary to preserve each claim independently."). The Court declines to equitably toll the statute of limitations.

**E. Wrongful Foreclosure.**

Plaintiff asserts a claim for wrongful foreclosure against FNMA. *Id.*, ¶¶ 107-21. "Arizona . . . has not expressly recognized the tort of wrongful foreclosure." *In re Mortgage Elec. Registration Sys., Inc.*, 754 F.3d 772, 784 (9th Cir. 2014); *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1043 (9th Cir. 2011). If such a tort action were to be recognized, it most likely would be subject to the two-year limitations period for tort actions found in A.R.S. § 12-542. It would also be akin to the specific claims identified in § 12-542 for "trespass for injury done to the estate or the property of another" and "forcible entry or forcible detainer." A.R.S. § 12-542(3), (6). As noted

---

[5] Plaintiffs seek leave to amend their complaint to allege that Defendants sent communications stating they would participate in the escalation process in good faith. Doc. 20 at 8. But even assuming such communications were sent, Defendants' willingness to participate in the escalation process does not guarantee an outcome of that process, nor does it somehow suggest that the limitations period has ceased to run. The proposed amendment therefore would not alter the fact that Plaintiffs have failed to show their right to equitable tolling under Arizona law.

above, this case was filed well after the two-year limitations period. Any claim for wrongful foreclosure is therefore time barred.

In addition, the claim would be barred by A.R.S. § 33-811(C). Under this statute,

> The trustor, its successors or assigns, and all persons to whom the trustee mails a notice of a sale under a trust deed pursuant to § 33-809 shall waive all defenses and objections to the sale not raised in an action that results in the issuance of a court order granting relief pursuant to rule 65, Arizona rules of civil procedure, entered before 5:00 p.m. mountain standard time on the last business day before the scheduled date of the sale.

A.R.S. § 33-811(C). Thus, "a trustor who fails to enjoin a trustee's sale waives his claims to title of the property upon the sale's completion, and also waives any claims that are dependent on the sale." *Morgan AZ Fin., L.L.C. v. Gotses*, 326 P.3d 288, 290-91 (Ariz. Ct. App. 2014) (citing *BT Capital, LLC v. TD Serv. Co. of Ariz.*, 275 P.3d 598, 600 (Ariz. 2012); *Madison v. Groseth*, 279 P.3d 633, 638 (Ariz. Ct. App.2012)).

Plaintiffs obtained a loan secured by a deed of trust on their house. Doc. 1-1, ¶ 10. Defendant Seterus, who was then acting as trustee, gave notice of the sale of Plaintiffs' house under the deed of trust. *Id.*, ¶ 31. Plaintiffs did not secure a court order preventing the sale, and the sale was completed on March 3, 2011. *Id.*, ¶ 34. Because Plaintiffs' wrongful foreclosure claim would necessarily "depend on . . . objections to the validity of the trustee's sale," *Madison*, 279 P.3d at 638, the Court finds that Plaintiffs have waived this claim under § 33-811(C).

**IV. Attorneys' Fees.**

Defendants Seterus and FNMA argue that Plaintiffs' promissory note and the deed of trust entitle them to attorneys' fees. The relevant section of the promissory note states:

> If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

Doc. 16-1 at 3. The relevant section of the Deed of Trust discusses the power of the lender to accelerate payment in the event of a default. *Id.* at 18. It further states that "Lender shall be entitled to collect all expenses incurred in pursuing the remedies

provided in this [Section], including, but not limited to, reasonable attorneys' fees and costs of title evidence." *Id.*

Plaintiffs do not contest the validity of these documents, but argue that they do not entitle Defendants to attorneys' fees. Doc. 20 at 9-10. The Court agrees. The promissory note permits recovery of costs incurred in "enforcing this Note," Doc. 16-1 at 3, and the deed of trust for costs incurred in responding to a default, *id.* at 18. This case involves Defendants' allegedly tortious conduct in modifying Plaintiffs' loan. It does not involve the enforcement of the note or Defendants' response to a default.

Defendants Seterus and FNMA also request attorneys' fees under A.R.S. § 12-341.01(A), which allows a court to award the successful party reasonable attorneys' fees "[i]n any contested action arising out of a contract, express or implied[.]" Courts consider six factors in deciding whether attorneys' fees should be granted under this statute. *Associated Indem. Corp. v. Warner*, 694 P.2d 1181, 1184 (Ariz. 1985). These factors are: (1) the merits of the unsuccessful party's claim, (2) whether the successful party's efforts were completely superfluous in achieving the ultimate result, (3) whether assessing fees against the unsuccessful party would cause extreme hardship, (4) whether the successful party prevailed with respect to all relief sought, (5) whether the legal question presented was novel or had been previously adjudicated, and (6) whether a fee award would discourage other parties with tenable claims from litigating. *Id.*

Defendants Seterus and FNMA contend that this action arises out of a contract, namely, the promissory note and deed of trust. Assuming without deciding that this is correct, the Court concludes that the six factors do not weigh in favor of attorneys' fees. Plaintiffs have recently completed a long foreclosure process on their home and awarding attorneys' fees may cause them hardship. Furthermore, Plaintiffs' equitable tolling argument is not frivolous and has not been previously decided by an Arizona court.

**V. Leave to Amend.**

Plaintiffs request leave to amend their complaint. Doc. 20 at 10-11. Rule 15 of the Federal Rules of Civil Procedure declares that courts should "freely give leave [to

amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). While "this mandate is to be heeded," leave to amend may be denied if the amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Court finds that amending the complaint would be futile. The statute of limitations clearly bars Plaintiffs' claims, equitable tolling is not justified in this case, and Plaintiffs' claim of wrongful foreclosure is time barred and waived under A.R.S. § 33-811(C).

**IT IS ORDERED:**

1. Defendants' motions to dismiss (Docs. 16, 21) are **granted.**
2. Defendants' request for attorneys' fees (Doc. 16) is **denied**.
3. Plaintiffs' complaint is dismissed with prejudice.
4. The Clerk is directed to terminate this action.

Dated this 17th day of March, 2015.

David G. Campbell
United States District Judge